UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

WILLIE SINGLETON,

                     Petitioner,

      -vs-

WILLIAM LEE,

                  Respondent.

**DECISION AND ORDER
No. 09-CV-6654(MAT)
& 11-CV-6293(CJS)**

---

## I.  Introduction

On October 6, 2009, proceeding pro se, Willie Singleton ("Singleton" or "Petitioner") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("the First Petition") on the basis of alleged constitutional infirmities in his November 27, 2007, conviction for failing to register as a sex offender pursuant to New York's Sex Offender Registration Act ("the SORA"). See Singleton v. Lee, 09-CV-6654(MAT) (W.D.N.Y.). This Court denied Singleton's petition with prejudice on June 13, 2011. Judgment dismissing the petition was entered on June 23, 2011.

Meanwhile, on June 7, 2011, Singleton filed another Section 2254 petition for habeas corpus in this Court ("the Second Petition"), challenging the November 27, 2007 conviction. The case was opened on June 14, 2011, as Singleton v. Lee, 11-CV-6293(CJS). On June 22, 2011, the Court (Larimer, D.J.), transferred the Second Petition to the United States Court of Appeals for the Second Circuit on the basis that it was a second or successive petition pursuant to 28 U.S.C. § 2244(b)(1), and permission from the Second

Circuit to file such a petition was required pursuant to 28 U.S.C.
§ 2244(b)(3).

On August 8, 2011, the Second Circuit issued a Decision and
Order with regard to both of Singleton's cases in the Western
District of New York. The Second Circuit held that because
Singleton's Second Petition was filed before judgment was entered
with regard to the dismissal of the First Petition, the Second
Petition was not successive and it was improperly transferred to
this Court. Accordingly, the Second Circuit remanded the matter to
the District Court with instructions to (1) vacate the judgment
denying the first § 2254 petition; (2) treat the Second Petition as
a motion to amend the First Petition pursuant to Fed. R. Civ. P.
15; and (3) determine whether the new claims relate back to the
original, timely-raised claims, if the one-year statute of
limitations has passed. The mandate issued on August 29, 2011.

The Second Circuit's mandate was filed in the Western District
in Case Number 11-CV-6293(CJS) on November 7, 2011. However, it was
not until March 2, 2012, that the mandate was filed in Case Number
09-CV-6654, thereby alerting this Court to the remand.

For the reasons discussed below, the Court finds that the
claims asserted in the Second Petition are untimely and do not
relate back to the First Petition for purposes of Fed. R. Civ. P.
15. In addition, the proposed new claims are unexhausted, but must
be deemed exhausted because Petitioner no longer has available
remedies in state court. The procedural rules that foreclose his
return to state court also render the claims procedurally

defaulted, and there is no basis to excuse the default. Amending the petition to add untimely and procedurally barred claims would be futile, and the motion to amend is therefore denied. The Court adheres to its original order dismissing the claims asserted in the First Petition, as set forth  below.

## II.  Factual Background and Procedural History

In 1996, while Petitioner was serving a prison term for a 1984 conviction for Rape in the First Degree, SORA was enacted. When he was released to parole in 1997, he was designated a level three sex offender and required to verify his address with local law enforcement every ninety days. Petitioner registered his address with the Geneva Police Department on July 3, 2006, and was due to register again on October 1, 2006. Because he failed to do so, he was arrested on October 8, 2006.

An Ontario County grand jury charged Petitioner with one count of Failure to Register as a Offender pursuant to New York Corrections Law ("Corr. Law") §§ 168-(f)(3) and 168-t. In July of 2005, Petitioner had previously been convicted of Failure to Register as a Sex Offender. Thus, pursuant to New York Corrections Law ("Corr. Law") § 168-(t), his subsequent failure to register was punishable by a class "D" felony.

On November 26, 2007, Singleton's jury trial commenced. Carole Perry ("Perry") was the secretary to the Geneva Chief of Police and was primarily responsible for overseeing the registry for sex offenders. T.111. Perry testified that Petitioner, a level three sex offender, was required to register his address with the police

department every ninety days by coming to the police department and signing the registry. Petitioner had been registering his address with the police department for over eight years, since 1999. T. 112. He had last registered his address on July 3, 2006, by coming to the police department and signing the registry verifying his address. Id. Petitioner next signed the registry on October 8, 2006, the day he was arrested. T.113-14. Perry was not aware of any attempt by Petitioner to sign the registry prior to his arrest. T.117.

Petitioner testified in his own behalf, admitting his previous convictions of first-degree rape, convicted of stalking in the fourth degree, public lewdness, forcible touching, and assault; his sex offender level; and that he was required to register his address with the police department every ninety days. T.157, 160-61.

Petitioner testified that when he had stated at the preliminary hearing that he had gone to the police department on September 25th or 26th, he was mistaken and later realized that he had actually gone on either September 21st or 22nd. T.154. Petitioner further testified that when he did go to the police department, he asked to sign the registry early and was told by Perry to come back on the first of the month. T.155. Because October 1st was a Sunday, he could not register. Petitioner explained that he did not return to register after that date because he was working two jobs and did not have time. T.155.

On rebuttal, Perry testified that she was working on September 21st and September 22nd of 2006, and did not see Petitioner at the police department on either of those dates. T.163. Perry stated that had Petitioner come in, she would have allowed him to register and would not have told him to return at a later time. Id.

The jury returned a verdict on November 27, 2007, convicting Singleton as charged in the indictment. He was sentenced the same day to an indeterminate term of two and one-third to seven years imprisonment.

Petitioner filed five pro se motions to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 asserting that his the predicate "failure to register as a sex offender" conviction, which was used to raise his current conviction to a felony, should have been vacated (first motion); SORA offender was declared unconstitutional with regard to sex offenders whose crimes were committed prior to the law's date of enactment (second motion); he was denied his right to counsel at the arraignment and he was improperly instructed on his right to request an adjournment in order to obtain counsel (third motion); he was erroneously forced to testify before the grand jury while wearing handcuffs (fourth motion); and, upon his release from prison, he was not afforded due process of law at the judicial hearing in which he was designated a level three sex offender (fifth motion). These motions were unsuccessful.

Represented by new counsel, Singleton instituted a direct appeal of his conviction, arguing that (1) the verdict was against

-5-

the weight of the evidence; (2) the Sandoval ruling was an abuse of discretion; and (3) the sentence was harsh and excessive. Petitioner filed a pro se supplemental appellate brief arguing that (1) the prosecution could not establish when the ninety-day registry cycle began without the testimony of Liz Carty, whom Petitioner claimed witnessed his signature on the registry on July 3, 2006; (2) he was not properly arraigned; and (3) he was not accorded a full judicial hearing to determine his level as a sex offender when he was released following his rape conviction.

The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed the conviction. People v. Singleton, 66 A.D.3d 1444 (4th Dept. 2009). Leave to appeal to the New York Court of Appeals was denied. People v. Singleton, 13 N.Y.3d 862 (2009).

Petitioner then filed a timely pro se petition for a writ of habeas corpus On October 6, 2009, in the Southern District, which was later transferred to this Court. Petitioner claimed that the law requiring him to register as a level three sex offender was signed and dated on May 6, 1997, when, according to Petitioner, the public notification provision of SORA was declared unconstitutional. Thus, Petitioner asserted, his conviction violates his constitutional rights to due process and equal protection.

In his Second Petition, filed after this Court dismissed the First Petition but before judgment was entered, Petitioner asserts two grounds for relief. The first is that his Sixth Amendment right

to the effective assistance of counsel was violated when, on January 27, 2006, after a judicial redetermination hearing held pursuant to "Section 168u(1)()(3)(4)(5) of Chapter 453-Article 6-C - of the Corrections Law of 1999, the petitioner's assigned counsel, Edward Czaja, failed to advise the petitioner in writing, in the petitioner's absence, of the petitioner's absolute right to appeal as of right from the sentencing court's judicial redetermination order." Second Petition at 7, ¶22(A) (Dkt. #1, 11-CV-6293).

The second ground for relief asserts that his Fourteenth Amendment rights to "procedural due process and to notice" were violated when, "on January 27, 2006, the sentencing court failed to advise the petitioner <u>sua</u> <u>sponte</u> in writing, in the petitioner's absence, and/or the petitioner's assigned counsel, Edward Czaja, of the petitioner's absolute right to an appeal as of right from the sentencing court's judicial redetermination order or of the thirty day statute of limitations for filing a timely notice of appeal on the petitioner's behalf." <u>Id.</u> at 8, ¶22(B) (Dkt. #1, 11-CV-6293).

Pursuant to the Second Circuit's mandate, the Court has construed the Second Petition as a motion to amend the First Petition.

## III. The Second Petition as a Motion to Amend

### A.    Rule 15 of the Federal Rules of Civil Procedure

A motion to amend a habeas corpus petition is governed by FED. R. CIV. P. 15. <u>Littlejohn v. Artuz</u>, 271 F.3d 360, 363 (2d Cir.2001). Once the time for amending pleadings as a matter of course expired,

"a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

### B.   Timeliness

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth a one-year limitations period for filing habeas petitions. The start-date of the limitations can vary but in most cases—including this one—the period commences after the prisoner's state conviction becomes final. Thus, the conviction became final on the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review, pursuant to 28 U.S.C. § 2244(d)(1)(A).

When the prisoner has actually appealed the conviction, the limitations period begins to run after the expiration of the ninety-day period within which a petition for a writ of certiorari may be filed in the United States Supreme Court, even if such a petition is not actually filed. See 28 U.S.C. § 2244(d)(1)(A); Clay v. United States, 537 U.S. 522, 525 (2003) ("[A] judgment of conviction becomes final when the time expires for filing a

petition for certiorari contesting the appellate court's affirmation of the conviction."); SUP. CT. R. 13(1) (setting 90-day limit for filing of petition of writ of certiorari); Valverde v. Stinson, 224 F.3d 129, 132 (2d Cir. 2000).

Here, however, Singleton did not pursue a direct appeal of the "judicial redetermination order" which apparently was issued on January 27, 2006, by the "sentencing court" (according to the Second Petition). Based upon this information provided by Singleton, the Court assumes that January 27, 2006, is the date of the conviction that Singleton is attacking in his Second Petition.

Under C.P.L. § 460.10(1), "[a] party seeking to appeal from a judgment or a sentence or an order and sentence included within such judgment, or from a resentence, or from an order of a criminal court not included in a judgment, must, within thirty days after imposition of the sentence . . .  file with the clerk of the criminal court in which such sentence was imposed or in which such order was entered a written notice of appeal, in duplicate, stating that such party appeals therefrom to a designated appellate court." N.Y. CRIM. PROC. LAW § 460.10(1)(a). Singleton's conviction therefore became final for purposes of 28 U.S.C. § 2244(d)(1)(A) on Monday, February 27, 2006,[1] when his time to file a Notice of Appeal in the

---

[1]

Thirty calendar days after January 27, 2006, is Sunday, February 26, 2006. However, Section 25-a(1) of the General Construction Law provides that "[w]hen any period of time, computed from a certain day, within which or after which or before which an act is authorized or required to be done, ends on a Saturday, Sunday or a public holiday, such act may be done on the next succeeding business day . . . ." N.Y. GEN. CONST. LAW § 25-a(1). The General Construction Law should be read into every statute subsequently enacted, unless the wording of said statute plainly expresses a contrary intent[.]" People v. Powell, 179 Misc.2d 1047, 1048, 690 N.Y.S.2d 826, 827 (N.Y. Sup. Ct. 1999) (citation omitted).

Appellate Division expired under C.P.L. § 460.10(1). <u>See</u> <u>Bethea v.</u> <u>Girdich</u>, 293 F.3d 577, 578-79 (2d Cir. 2002) (state court judgment became final when the thirty-day period for filing a Notice of Appeal from judgment of conviction expired; petitioner was sentenced on March 10, 1999, and his time for filing a notice of appeal from his judgment of conviction therefore expired on April 9, 1999) (citing N.Y. CRIM. PROC. LAW § 460.10(1)); <u>see</u> also, e.g., <u>Farkas v. Girdich</u>, No. 03 Civ. 9758(TPG), 2010 WL 2367269, at *3 (S.D.N.Y. June 11, 2010); <u>Martinez v. United States</u>, Nos. 00 Civ. 1214(DLC), 96 CR. 450-04(DLC), 2000 WL 863121, at *1 (S.D.N.Y. Jan. 28, 2000) (stating that "judgment of conviction became final for purposes of the AEDPA . . . when [petitioner's] time to file a notice of appeal expired").

Because Singleton's period of direct review ended on February 27, 2006, the AEDPA statute of limitations ended on February 27, 2007, two years prior to his filing of the First Petition. The pendency of Singleton's first habeas proceeding did not toll AEDPA's statute of limitations. <u>See</u> <u>Duncan v. Walker</u>, 533 U.S. 167, 181-82 (2001) (properly filed application for federal habeas corpus does not toll the statute of limitations period). The Second Petitioner clearly is untimely. Consequently, the Court cannot grant a motion to amend adding the claims asserted in the Second Petition unless the claims relate back to those raised in the

---

C.P.L. § 460.10 does not contain wording expressing an intent tat the General Construction Law should not be read into it.

original habeas petition. See FED. R. CIV. P. 15(c); Fama v. Commissioner of Corr. Servs., 235 F.3d 804, 816 (2d Cir. 2000).

## C.   Relation Back

Where, as here, a petitioner wishes "to amend his petition long after the one-year statute of limitations had run, he [is] required to show that his amended petition relates back in accordance with Rule 15(c) [of the Federal Rules of Civil Procedure]." Fama, 235 F.3d at 816. Fed. R. Civ. P. 15(c) provides in pertinent part as follows:

> An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading.

FED. R. CIV. P. 15(c)(B). "An amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Mayle v. Felix, 545 U.S. 644, 650 (2005). Rather, the proposed new claims and the original claims must be "tied to a common core of operative facts" for relation back to be in order. Id. at 664.

The proposed new claims relate to a "judicial redetermination" that occurred on January 27, 2006, while the original claims relate to a conviction entered on November 27, 2007. The fact that both proceedings relate in some way to Singleton's sex-offender-level designation under SORA is insufficient. See Mayle v. Felix, 545 U.S. at 664 (explicitly "reject[ing] [petitioner]'s translation of same 'conduct, transaction, or occurrence' to mean same 'trial,

conviction, or sentence'"). Singleton's proposed new claims differ in both "time and type" from those set forth in the original petition, and they plainly do not belong to the same common core of operative facts as the claims asserted in his original habeas petition.

Because the proposed claims are untimely and do not relate back to the original petition, it would be futile to grant leave to amend. The Second Circuit has explained that "where amendment would be futile, denial of leave to amend is proper." In re Tamoxifen Citrate Antitrust Litig., 466 F.3d 187, 220 (2d Cir. 2006).

### D.   Exhaustion and Procedural Default

In addition to being untimely, the proposed new claims are unexhausted. Section 2254 codifies an exhaustion requirement, providing that a federal habeas court may not grant "[a]n application for a writ of habeas corpus . . . unless it appears that-(A) the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A).

Although exhaustion is a threshold requirement for federal habeas review, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Harris v. Reed, 489 U.S. 255, 263 n.9 (1989). When a petitioner fails to properly exhaust his claims in state court, and the claims can no longer be raised as a result of his failure to follow state procedure, no remedy is "available in the courts of the State" within the meaning of 28 U.S.C. § 2254(b)(1)(A). St. Helen v.

Senkowski, 374 F.3d 181, 183 (2d Cir. 2004) (per curiam) ("[E]ven if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it has become procedurally barred under state law.") (citing Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991)).

Singleton has procedurally defaulted his claims pertaining to the 2006 redetermination order because New York's procedural rules now bar him from raising them in New York courts. Although he apparently has not used the one direct appeal to which he is entitled, the time period for filing a notice of appeal has long since passed. See N.Y. CRIM. PROC. LAW § 460.10(1) (notice of appeal must be filed within thirty (30) days of the judgment, sentence, or order sought to be appealed). Pursuant to C.P.L. § 460.10(1), he would have had to file a notice of appeal by February 27, 2006, as noted above. C.P.L. § 460.30 permits a defendant to seek leave to file a late notice of appeal provided that the application is made within one year of the date the notice should have been filed. See People v. Syville, 15 N.Y.3d 391, 394 (2010). However, the one-year grace period expired on February 27, 2007, one year and thirty days after the "redetermination order" issued on January 27, 2006. See People v. Smith, 265 A.D.2d 941, 941 (4th Dept. 1999) ("Because the motion for an extension of time to take an appeal was made more than one year and 30 days from the date of sentencing, the motion is untimely. Defendant's failing health does not excuse the failure to move within the statutory time period.") (citations omitted).

C.P.L. § 460.30's "one-year extension for seeking permission to file late leave of appeal is inflexible." White v. West, 2010 5300526, at *17 n.14 (E.D.N.Y. Dec. 6, 2010) (citing, inter alia, Shomo v. Maher, No. 04-CV-4149, 2005 WL 743156, at *5 (S.D.N.Y. Mar. 31, 2005) ("'We remain convinced that strict construction is appropriate since the time limits within which appeals must be taken are jurisdictional in nature and courts lack inherent power to modify or extend them.'") (quoting People v. Thomas, 47 N.Y.2d 37, 43 (1979)). New York Courts have recognized only two exceptions to the one-year time period in C.P.L. § 460.30. See People v. Syville, 15 N.Y.3d at 399 (noting that it had authorized an appeal despite noncompliance with the CPL 460.30 time limit when, "through action or unjustifiable inaction by a prosecutor, defendant's diligent and good faith efforts to exercise his appellate rights within the one-year time frame were thwarted" and recognizing a second exception for the situation where "an attorney has failed to comply with a timely request for the filing of a notice of appeal and the defendant alleges that the omission could not reasonably been discovered within the one-year period").

Singleton cannot avail himself of either exception outlined in Syville. There is no suggestion that the prosecutor thwarted Singleton's efforts to exercise his appellate rights. In addition, Singleton has not established that he made a timely request to file a notice of appeal with which his attorney failed to comply. Although Singleton faults his attorney for allegedly failing to notify him in writing of his right to appeal, Singleton could have

-14-

avoided that problem by personally appearing in court for the redetermination hearing. It was Petitioner's choice to absent himself from proceedings at which he had a right to be present, and he alone he must bear the consequences of his actions.

Apart from a direct appeal, the only other way for Petitioner to exhaust the proposed claims would be to file a C.P.L. § 440.10 motion to vacate the judgment. Because the claims were matters of record that could have been raised on direct appeal, collateral review by means of a such a motion is unavailable. See N.Y. CRIM. PROC. LAW § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when . . . Although sufficient facts appear on the record . . . such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him. . . .").

Because Petitioner's unexhausted claims no longer can proceed in state court, they are subject to a procedural default and this Court may reach their merits only if he "can first demonstrate either cause and actual prejudice, or that he is actually innocent." Bousley v. United States, 523 U.S. 614, 622 (1998) (internal quotation marks and citations omitted); see also Schlup v. Delo, 513 U.S. 298, 321 (1995). Singleton has not met this standard.

In order to show "cause" for a default, a habeas petitioner must demonstrate that "some objective factor external to the

defense" prevented the petitioner from presenting the claim. Coleman v. Thompson, 501 U.S. 722, 753 (1991). Ineffective assistance of counsel can constitute cause, but it must be true, constitutional ineffectiveness, and it must be a fully exhausted, non-procedurally defaulted claim. See Edwards v. Carpenter, 529 U.S. 446, 451, 453 (2000); Reyes v. Keane, 118 F.3d 136, 139-40 (2d Cir. 1997). Where, as here, the petitioner has failed to demonstrate cause, the court need not address the issue of prejudice. Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985) ("[W]e need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [the petitioner] showed prejudice."). Petitioner has not attempted to demonstrate that he is actually innocent so as to invoke the "fundamental miscarriage of justice" exception to the procedural default rule. Thus, proposed claims are subject to an unexcused procedural default, providing an additional basis for concluding that permitting amendment would be futile.

## IV.  Analysis of the Claims Presented in the First Petition

Singleton, who has been adjudicated as a level three offender because he presents a "high" risk of reoffense, claims in his First Petition that (1) the SORA violates the Ex Post Facto clause; and (2) he was not given a full and fair hearing to determine his sex offender level in violation of his procedural due process rights. In the Second Petition, he claims that his assigned counsel and the judge at the redetermination failed to advise him of his right to appeal (Grounds One and Two).

### A.    **Ex** **Post** **Facto** **Clause Violation (First Petition)**

Article I, § 10, of the Constitution prohibits the States from passing any laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." Collins v. Youngblood, 497 U.S. 37, 41 (1990). The Ex Post Facto Clause of the Constitution "applies only to *penal* statutes which disadvantage the offender affected by them," Id. (emphasis added). The Second Circuit's decision in Doe v. Pataki, 120 F.3d 1263 (2d Cir. 1997), forecloses habeas relief on Petitioner's claim that his mandatory SORA registration violates the Ex Post Facto clause. In Doe, the Second Circuit held that the SORA's registration and community notification provisions were not "punishments" within the meaning of the Ex Post Facto clause. 120 F.3d at 1284, 1285. See also Smith v. Doe, 538 U.S. 84, 105-06 (2003) (holding that retroactive application of Alaska's sex offender registry statute did not violate the Ex Post Facto clause). Habeas relief is therefore unavailable to Petitioner on his Ex Post Facto claim. Accord, e.g., Manzullo v. People of New York, No. 07 CV 744(SJF), 2010 WL 1292302, at *8 (E.D.N.Y. Mar. 29, 2010) (denying habeas relief to petitioner claiming that both the registration and notification provisions of the SORA constitute punishment for purposes of the Ex Post Facto clause)(citations omitted).

### B.   **Due Process Violation (First Petition)**

Extensive litigation regarding the constitutionality of the SORA was resolved in a 2004 consent decree providing that all level two and three sex offenders who were required to register under the

SORA were afforded the right to a new hearing to redetermine their sex offender level. See Doe v. Pataki, 481 F.3d 69, 73-74 (2d Cir. 2007).

It is not altogether clear that the determination of risk-level under the SORA implicates a cognizable liberty interest for purposes of the Due Process Clause of the Fourteenth Amendment. Fowlkes v. Parker, No. 9:08-CV-1198 (LEK/DEP), 2010 WL 5490739, at *8 (N.D.N.Y. Dec. 9, 2010) (citing Henderson v. Heffler, No. 07-CV-04870, 2010 WL 2854456, at *5 (W.D.N.Y. Jul. 19, 2010) (Curtin, D.J.); other citations omitted)). For purposes of the instant case, the Court assumes that Petitioner possesses a cognizable liberty interest in the adjudication of his sex-offender level.

Petitioner's due process claim nonetheless lacks merit. When a person's liberty interests are implicated, due process requires at a minimum notice and an opportunity to be heard before a neutral decision-maker. E.g., Hamdi v. Rumsfeld, 542 U.S. 507, 533 (2004) (plurality opinion) (citations omitted). Even if Petitioner did not receive a hearing at the time he was first designated a level three sex offender in 1997, he was subsequently afforded such a hearing as the result of the procedural amendments to SORA, passed as a result of the 2004 settlements in the Doe litigation. See Letter dated May 25, 2006, attached as Exhibit V to Respondent's Answer and Memorandum of Law (Dkt. #14).

Although Petitioner was provided notice of the redetermination hearing and apparently expressed a desire to attend, he failed to

appear on the scheduled date. Accordingly, the hearing was conducted in Petitioner's absence. However, Petitioner's assigned counsel was present. Petitioner was again determined to be a level three sex offender. See id.

At the redetermination hearing, Petitioner clearly was provided with all of the process due to him in connection with the determination of his risk level. See, e.g., Woe v. Spitzer, 571 F. Supp.2d 382, 385-89 (E.D.N.Y. 2008)("Even assuming that Plaintiff's complaint somehow sets forth a protected liberty interest in the right to continuation of the ten year registration requirement, it is clear that the procedural amendments to SORA, passed as a result of the settlement of the Doe litigation, provide Plaintiff with all of the process that is due in connection with the determination of the risk level to be assigned. Indeed, Plaintiff himself took advantage of the redetermination hearing provided for in the settlement.").

### C.   Failure to Advise Petitioner of the Right to Appeal the Redetermination (Second Petition)

Petitioner contends that he was denied his Sixth Amendment right to the effective assistance of counsel at the redetermination hearing because his assigned attorney failed to notify him in writing of his right to appeal. Petitioner contends that due process required the judge to notify him in writing as well of his right to appeal the redetermination.

These claims are specious. Petitioner, who properly received notice of the redetermination hearing, nevertheless failed to

appear. His failure to appear was wilful and intentional, and the court properly conducted the hearing in his absence. Petitioner's contumacious conduct does not entitle him to special solicitude from his attorney or the court. Although Rule 32(a)(2) of the Federal Rules of Criminal Procedure provided that "the court shall advise the defendant of any right to appeal the sentence[,]" those rules are not applicable to Singleton, a state prisoner.

None of Petitioner's claims that his constitutional rights were violated in connection with his adjudication as a level three sex offender warrant habeas relief.

## V.   Conclusion

For the reasons stated above, Willie Singleton's request for writ of habeas corpus is denied. The First Petition (Dkt. #1 in 09-CV-6654) and the Second Petition (Dkt. #1 in 11-CV-6293) are dismissed with prejudice. Because Petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal in forma pauperis.

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with

United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

This Decision and Order terminates <u>Singleton v. Lee</u>, 09-CV-6654(MAT) (W.D.N.Y.) and <u>Singleton v. Lee</u>, 11-CV-6293(CJS) (W.D.N.Y.). The Clerk of the Court is directed to close both cases.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

DATED:     March 13, 2012
           Rochester, New York